**CHRISTENSEN JAMES & MARTIN**
KEVIN B. CHRISTENSEN, ESQ. (175)
DARYL E. MARTIN, ESQ. (6735)
LAURA J. WOLFF, ESQ. (6869)
7440 W. Sahara Avenue
Las Vegas, Nevada 89117
Telephone: (702) 255-1718
Facsimile: (702) 255-0871
kbc@cjmlv.com, dem@cjmlv.com, ljw@cjmlv.com
*Attorneys for the Southern Nevada Operating*
*and Maintenance Engineers Apprenticeship*
*and Training Trust Fund*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

* * * * *

THE SOUTHERN NEVADA OPERATING
AND MAINTENANCE ENGINEERS
APPRENTICESHIP AND TRAINING
TRUST FUND, by and through its designated
fiduciary Tom O'Mahar,

        Plaintiff,

vs.

BRADY LINEN SERVICES, LLC, a Nevada
limited liability company,

        Defendant.

CASE NO.: 2:17-cv-00115-JCM-PAL

**SECOND STIPULATION FOR
LEAVE TO FILE AMENDED
COMPLAINT**

       Plaintiff, the Southern Nevada Operating and Maintenance Engineers Apprenticeship and Training Trust Fund ("Plaintiff"), and Defendant, Brady Linen Services, LLC ("Defendant"), by and through their respective counsel of record, hereby stipulate to allow the Plaintiff to amend the Amended Complaint for Breach of Contract [Doc. 9] ("Amended Complaint") against the Defendant.

       Plaintiff intends to include in this Case claims for unpaid contributions that arose after 2015. Because only additional damages claimed by the Plaintiff after 2015 will be added to the Case without introducing new factual and legal issues, the proposed amendment will not delay resolution of this Case. Denying Plaintiff the opportunity to amend would effectively force the filing a new lawsuit, which would waste the resources of the parties and the Court. Plaintiff

would also like to change a typo in Paragraph 45. Plaintiff has endeavored to state a claim that will encompass any and all sums that Plaintiff says are owed by Defendant or may yet become due from the Defendant, such as those that Plaintiff expects may become due on June 30, 2018. As such, these are the proposed changes made to the Amended Complaint:

1. Paragraph 45: "In September of 2017, the NLRB rescinded its earlier denials for both the Union Charge and the Brady Charge and re-opened both cases." **Proposed change**: "In September of 2016, the NLRB rescinded its earlier denials for both the Union Charge and the Brady Charge and re-opened both cases."

2. Paragraph 50: "On or about October 11, 2016, the Plaintiff sent Brady a payment demand ("Demand") and Invoice No. 6536 in the sum of $24,128.00, to collect the annual assessment, based upon Brady's forty (40) Operating Engineers on payroll as of June 30, 2016 ("Assessment Delinquency")." **Proposed change:** "Since 2016, the JATC has timely demanded that Brady pay the annual assessment based upon Brady's Operating Engineers on payroll as of the end of that calendar year ("Assessment Delinquency")."

3. Paragraph 51: "Prior to and after the Demand, Plaintiff has made other requests that Brady pay the Assessment Delinquency.  However, Brady has failed to pay." **Proposed change**: "However, Brady has failed to pay any Assessment Delinquency to the JATC since payment for the 2015 annual assessment."

4. Paragraph 52: "Consistent with the Brady and Mission CBAs, Memorandums of Agreement, New Labor Agreements and Trust Agreement, the JATC has initiated this legal proceeding to collect the unpaid annual assessment charged by the JATC for calendar year 2016 from Defendant Brady." **Proposed change**: "Consistent with the Brady and Mission CBAs, Memorandums of Agreement, New Labor Agreements and Trust Agreement, the JATC has initiated this legal proceeding to collect the Assessment Delinquency charged by the JATC for all amounts due and owing after 2015 from Defendant Brady."

5. Paragraph 53: "No matter what the NLRB decides in ruling on Brady's Charge (Case No. 28-CB-170340), which decision will not be binding on the JATC, Brady must pay the JATC the amount of the annual assessment charged by the JATC for calendar year 2016, and the United States District Court must require Brady to pay the claims asserted by the JATC, based on one or more of the following legal theories:" **Proposed change**: "No matter what the NLRB decides in ruling on Brady's Charge (Case No. 28-CB-170340), which decision will not be binding on the JATC, Brady must pay the JATC the amount of the Assessment Delinquency accrued after 2015, and the United States District Court must require Brady to pay the claims asserted by the JATC, based on one or more of the following legal theories:"

6. Paragraph 61: "As a result of the Brady's violation of the terms of the Brady and Mission CBAs, Memorandums of Agreement, New Labor Agreements and Trust Agreements, Plaintiff has sustained damages and is entitled to an order enforcing the terms of the Brady and Mission CBAs, Memorandum of Agreements, New Labor Agreements and Trust Agreements and requiring Defendant to pay the Assessment Delinquency in the amount of $24,128.00, plus accruing interest, attorneys' fees, and liquidated damages." **Proposed change**: "As a result of Brady's violation of the terms of the Brady and Mission CBAs, Memorandums of Agreement, New Labor Agreements and Trust Agreements, Plaintiff has sustained damages and is entitled to an order enforcing the terms of the Brady and Mission CBAs, Memorandum of Agreements, New Labor Agreements and Trust Agreements and requiring Defendant to pay the Assessment Delinquency, plus accruing interest, attorneys' fees, and liquidated damages."

7. Paragraph 71: "Plaintiff is entitled to equitable relief affirmatively compelling Defendant to pay the Assessment Delinquency in the amount of $24,128, plus accruing interest and liquidated damages for the benefit of Plaintiff." **Proposed change**: "Plaintiff is entitled to equitable relief affirmatively compelling Defendant

to pay the Assessment Delinquency, plus accruing interest and liquidated damages for the benefit of Plaintiff."

In support of this Stipulation and Request, the Parties state as follows:

1. The Plaintiff is permitted to file a Second Amended Complaint with the changes stated above and which is attached hereto;

2. The Plaintiff shall have ten days from the date the Order is signed to file the Second Amended Complaint; and

3. As the proposed Second Amended Complaint is not intended to and does not introduce new factual and legal issues, and Defendant's Motion to Dismiss encompasses the proposed amendments, Defendant will not be required to amend or re-file its Motion to Dismiss or otherwise respond to the Second Amended Complaint until this Court decides such Motion. Defendant's Motion to Dismiss and the parties' briefing thereon shall remain submitted to the Court.

Dated this 27th day of July, 2017.

CHRISTENSEN JAMES & MARTIN

By: /s/ Laura J. Wolff
Laura J. Wolff, Esq.
Nevada Bar No. 6869
7440 W. Sahara Avenue
Las Vegas, Nevada 89117
Telephone: (702) 255-1718
Facsimile: (702) 255-0871

*Attorneys for Plaintiff*

KAMER ZUCKER ABBOTT

By: /s/ Nicole A. Young
Gregory J. Kamer, Esq.
Nevada Bar No. 0270
Nicole A. Young, Esq.
Nevada Bar No. 13423
3000 West Charleston Blvd., Suite 3
Las Vegas, Nevada 89102
Telephone: (702) 259-8640
Facsimile: (702) 259-8646

*Attorneys for Defendant*

## ORDER

DATED August 2, 2017.

UNITED STATES DISTRICT JUDGE

-4-

[PROPOSED]
SECOND AMENDED COMPLAINT FOR BREACH OF CONTRACT

**CHRISTENSEN JAMES & MARTIN**
KEVIN B. CHRISTENSEN, ESQ. (175)
DARYL E. MARTIN, ESQ.  (6735)
LAURA J. WOLFF, ESQ. (6869)
7440 W. Sahara Avenue
Las Vegas, Nevada 89117
Telephone:  (702) 255-1718
Facsimile:  (702) 255-0871
kbc@cjmlv.com, dem@cjmlv.com, ljw@cjmlv.com
*Attorneys for the Southern Nevada Operating*
*and Maintenance Engineers Apprenticeship*
*and Training Trust Fund*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

\* \* \* \* \*

THE SOUTHERN NEVADA OPERATING
AND MAINTENANCE ENGINEERS
APPRENTICESHIP AND TRAINING
TRUST FUND, by and through its designated
fiduciary Tom O'Mahar,

        Plaintiff,

vs.

BRADY LINEN SERVICES, LLC, a Nevada
limited liability company,

        Defendant.

CASE NO.:   **2:17-cv-00115-JCM-PAL**

**SECOND AMENDED
COMPLAINT FOR BREACH OF
CONTRACT**

Southern Nevada Operating and Maintenance Engineers Apprenticeship and Training Trust Fund ("Plaintiff", "Trust" or "JATC"), acting by and through its designated fiduciary Tom O'Mahar and through its attorneys, Christensen James & Martin, Chtd., for its amended causes of action, complains, asserts and alleges as follows:

## JURISDICTION & VENUE

1.     This Court has jurisdiction of this case pursuant to Section 502(e)(1) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1132(e)(1), which grants the United States District Courts exclusive jurisdiction over civil actions brought by a fiduciary pursuant to Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3),

CHRISTENSEN JAMES & MARTIN
7440 WEST SAHARA AVE., LAS VEGAS, NEVADA 89117
PH: (702) 255-1718 § FAX: (702) 255-0871

to redress violations or enforce the terms of ERISA or an employee benefit plan governed by ERISA. Such jurisdiction exists without respect to the amount in controversy or the citizenship of the parties, as provided in Section 502(f) of ERISA, 29 U.S.C. § 1132(f).

2.      This Court also has jurisdiction of this case pursuant to Section 301(a) of the Labor Management Relations Act of 1947, as amended ("LMRA"), 29 U.S.C. § 185(a), which grants the United States District Courts original jurisdiction over suits for violation of contracts between an employer and labor organization in an industry affecting commerce, without respect to the amount in controversy or the citizenship of the parties.

3.      To the extent this Amended Complaint sets forth any state law claims, this Court has supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367(a).

4.      Venue is proper in this Court pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), and Section 301(a) of the LMRA, 29 U.S.C. § 185(a), in that this is the Judicial District in which the Trust is administered.

## PARTIES

5.      The Trust is an express trust created pursuant to a written declaration of trust, consistent with § 302(c) of the Labor-Management Relations Act of 1947, as amended [29 U.S.C. § 186(c)], between the Union and those employers who heretofore have become bound by Collective Bargaining Agreements with the Union (defined below) or through other written promises and agreements to remit monetary contributions to the Trust.

6.      The Board of Trustees of the Trust is comprised of fiduciaries, as that term is defined in ERISA [29 U.S.C. § 1002(21)].

7.      At all times material herein, the International Union of Operating Engineers, Local No. 501 ("Union") has been a labor organization representing employees in the construction industry in southern Nevada. The Union is a labor organization representing

employees in an industry affecting commerce within the meaning of § 301(a) of the Labor Management Relations Act of 1947, as amended [29 U.S.C. § 185(a)].

8.    Defendant Brady Linen Services, LLC ("Brady" or "Defendant") is a Nevada limited liability company doing business as a laundry and linen service in Clark County, Nevada.

### GENERAL ALLEGATIONS

Collective Bargaining Agreements

9.    Since September 1, 2009, Brady has been a party to that certain Labor Agreement with the Union ("Brady CBA"), which was initially effective through August 31, 2011, and thereafter from year to year unless terminated by either party. Relevant portions of the Brady CBA include the following:

  a.   Article 22 provides that Apprentice Engineers "shall be subject to the terms and conditions of the 'Apprenticeship Standards of the Operating and Maintenance Engineer Trade for Southern Nevada', which provide that he/she shall receive such instruction and experience in all phases of the work as are necessary to become a practical and skilled mechanic."

  b.   Article 38 states: "Contributions. Effective September 2009, and annually thereafter, the Employer shall remit to (sic) the Southern Nevada Operating and Maintenance Engineers Apprentice and Training Trust Fund the sum of Six Hundred Three Dollars and Twenty Cents ($603.20) multiplied by the number of engineers on his payroll as of the thirtieth day of June immediately preceding".

  c.   Article 38 also states: "Employment of Apprentices.  Each Employer who employs at least twenty (20) engineers, excluding apprentices, shall, at all times he employs said number of engineers, employ at least one (1) apprentice

engineer."

    d.  Article 38 also provides that every employer who enters into the CBA "shall become a party to the Agreement and Declaration of Trust establishing the Southern Nevada Operating and Maintenance Engineers Apprenticeship and Training Trust Fund."

    e.  Article 40 provides that, "This Agreement shall become effective September 1, 2009 and shall remain in effect to and including August 31, 2011, and from year to year thereafter unless written notice is given sixty (60) days prior to any expiration date by either party . . ."

10.    The Memorandum of Agreement regarding Collective Bargaining Agreement Extension signed on August 29, 2011 by Brady and the Union states in relevant part, "In the event the parties do not reach a fully-ratified agreement by the August 31, 2011 expiration date of their Existing Agreement, they shall continue their good faith efforts to reach an agreement ... The purpose of the Memorandum Agreement is to continue the Existing Agreement in full force until such time that a new Collective Bargaining Agreement is completed."

11.    The Memorandum of Agreement regarding Collective Bargaining Agreement Extension signed on February 27, 2012 by Brady and the Union states in relevant part, "In the event the parties do not reach a fully-ratified agreement by August 31, 2012, they shall continue their good faith efforts to reach an agreement ... The purpose of this Memorandum of Agreement is to continue the Existing Agreement in full force until such time that a new Collective Bargaining Agreement is completed."

12.    Prior to 2011 Brady owned only two commercial laundry plants known as "Lindell" and "Losee".  Both the Lindell and Losee locations were governed by the Brady CBA and the subsequent Memorandums of Agreement.

13.     On or about July 15, 2011, Brady bought two (2) more plants known as "Mayflower" and "Foremaster".

14.     When Brady acquired the Mayflower and Foremaster locations, the CBA for these locations was entitled "Labor Agreement between Mission of Nevada, Inc. dba Mission Industries and International Union of Operating Engineers Local 501" ("Mission CBA"), which was slightly different from the Brady CBA. (Hereafter "Lindell", "Losee", "Mayflower" and "Foremaster" may be collectively referred to as "Plants").

15.     Brady was identified as the "employer" bound to the Mission CBA for the Mayflower and Foremaster plants, as agreed in a Letter of Understanding/Assumption of Mission Agreement, which states "The purpose of this Letter is to establish the parameters of the Employer's assumption and extension of the September 1, 2009 through August 31, 2011 Collective Bargaining Agreement ... Except as expressly provided herein, the Employer hereby agrees to be bound by the terms and conditions in the CBA between Mission and the Union."

16.     The Mission CBA was effective through August 31, 2011, and thereafter from year to year unless terminated by either party and contained the following relevant terms:

a.  Article 21 provides that Apprentice Engineers "shall be subject to the terms and conditions of the 'Apprenticeship Standards of the Operating and Maintenance Engineer Trade for Southern Nevada', which provide that he/she shall receive such instruction and experience in all phases of the work as are necessary to become a practical and skilled mechanic."

b.   Article 38 states: "Contributions. Effective September 1, 2009, and annually thereafter, the Employer shall remit to the Southern Nevada Operating engineers Apprentice and Training Fund the sum of Four Hundred Fifty-seven Dollars and Sixty Cents ($457.60) multiplied by the number of operating

engineers on the payroll as of the thirtieth (30th) day of June immediately preceding."

   c.   Article 38 also states: "<u>Employment of Apprentices</u>.  Each Employer location employing at least twenty (20) engineers, excluding apprentices, shall, at all times it employs said number of engineers, employ at least one (1) apprentice engineer."

   d.   Article 38 also provides that every employer who enters into the CBA "shall become a party to the Agreement and Declaration of Trust establishing the Southern Nevada Operating and Maintenance Engineers Apprenticeship and Training Trust Fund."

   e.   Article 42 provides that, "This Agreement shall become effective September 1, 2009, and shall remain in effect to and including August 31, 2011, and from year to year thereafter unless written notice is given sixty (60) days prior to any expiration date by either party ..."

17.    The Memorandum of Agreement regarding Collective Bargaining Agreement Extension signed on February 27, 2012 by Brady and the Union with regard to the Mission CBA states "In the event the parties do not reach a fully-ratified agreement by August 31, 2012, they shall continue their good faith efforts to reach an agreement ... The purpose of this Memorandum of Agreement is to continue the Existing Agreement in full force until such time that a new Collective Bargaining Agreement is completed."

<u>Trust Agreements</u>

18.    Pursuant to the express terms of the Brady and Mission CBAs, Brady agreed to be bound to the Trust Agreement.  Upon information and belief, there are two (2) Trust Agreements that were in effect during the relevant period of the Amended Complaint including the Revised

Agreement and Declaration of Trust ("Trust Agreement") and the Second Restated Agreement and Declaration of Trust for the Southern Nevada Operating and Maintenance Engineers Apprenticeship and Training Trust Fund ("Restated Trust Agreement") (hereafter "Trust Agreement" and "Restated Trust Agreement" may be referred to collectively as "Trust Agreements").

19.     Article I, Section 2.d of the Trust Agreement provides:

An Employer, as described above, within the provisions of applicable law, by filing reports of contributions or payments due, or by the making of contributions and payments to the Fund pursuant to an Apprenticeship or Training Plan or Collective Bargaining Agreement, shall be deemed to have accepted and be bound by this Revised Agreement and Declaration of Trust. Contribution to the Fund shall be payable on such periodic basis -- i.e annual, monthly or other period of time -- as required by the relevant Collective Bargaining Agreement or Participation Agreement. All Employer contributions shall be forwarded to a central depository designated by the Board of Trustees. Said payments are to continue in accordance with the schedule and amounts required by any Collective Bargaining Agreement, Participation Agreement, this Trust Agreement or other Agreement in such form as the Trustees may, from time to time, prescribe.

20.     Other relevant portions of the Trust Agreement include the following:

a.  Article II, Section 9 of the Trust Agreement provides: Employee Right to Receive Benefits. Any Employees who shall have been employed by an Employer failing to make the periodic contributions as provided in the Collective Bargaining Agreement shall, despite such delinquency, be entitled to receive benefits of the Plan or Program and the deficiency arising from such delinquency ..."

b.  Article III, Sections 1 and 2 provide that, "Employer contributions shall be paid to the Fund in such manner and at such time and place and on such transmittal reports as the Board of Trustees may, from time to time, prescribe ... Said payments shall continue in accordance with the schedules an amounts required by any Collective Bargaining Agreement, Participation Agreement, this Trust Agreement, and any other writing the Trustees may prescribe for agreeing to become bound by the terms of this Amended Trust Agreement."

c.  Article V, Section 1 vests in the Trustees "all general and incidental powers" necessary to operate and administer the Trust Fund and carry out the purposes of the Trust Agreement.

d.  Article V, Section 2 irrevocably grants the power of attorney to the Trustees from the Employers and the Union "to supervise, administer and maintain said Fund", "with full authority to act ... as their representatives in the administration of said Fund" and "vested with all right, title and interest in and to the Fund".

e.  Article V, Section 3(a) grants the Trustees the power to construe and interpret the Trust Agreement and administer the Fund, and "any construction and/or interpretation adopted by the Trustees in good faith shall be final and binding."

f.  Article V, Section 6 provides the express powers to adopt a plan and standards for the training program, to verify claims for payment of benefits and provisions of programs and to determine the manner of payment of benefits and maintain reserve funds.

g.  Article VII, Section 1 provides: "Subject to the provisions of the Collective Bargaining Agreements, the rights and duties of all parties, including the Employers, the Union, the Employees, Participants and the Trustees, shall be governed by the provisions of this Revised Trust Agreement."

h.  Article VII, Section 5 provides that "Any dispute as to eligibility, types, amount or duration of benefits shall be resolved by the Board of Trustees ..."

i.  Article VII, Section 6 provides that "All questions pertaining to this Trust Agreement, the Fund or Benefit Plan, and their validity, administration and construction shall be determined by the Trustees ..."

j.  Article VII, Section 7 provides "The provisions of this Amended Trust Agreement shall be liberally construed in order to promote and effectuate the establishment and operation of the apprenticeship and journeyman upgrade

and licensing training programs contemplated herein. The Trustees shall have the powers to interpret, imply or construe the provisions of this Agreement, and any construction, interpretation and application adopted by the Trustees in good faith shall be binding upon the Union, the Employers, Participants and Beneficiaries."

21.     The Trust Agreement further provides that upon failure to pay contributions in a timely manner, liquidated damages shall be assessed at the greater of the sum of either twenty dollars ($20) or ten percent (10%) of the delinquent contributions, interest accrues according to the terms of the CBA, and attorney's fees and costs will be assessed and become due and owing to the JATC.  *See also* 29 U.S.C. § 1132(g)(2).

22.     Relevant provisions of the Restated Trust Agreement state:

a.  Section 1.11.3 says: "... any ... limited liability company ... which ... does not have a Collective Bargaining Agreement ... [but otherwise] agrees in writing to contribute and makes Payments to the Fund at a rate approved by the Board and for the same hours for its Employees as Employers with Collective Bargaining Agreements with the Union then currently contributing or required to contribute to the Fund ... irrevocably designates as its trustees such Employer Trustees as are then acting as Employer Trustees hereunder, and their successor Trustees, and ... agrees to be bound by all action taken by the Board of Trustees."

b.  Section 13.12 addresses the power of the parties agreeing to restate the Trust Agreement, and says:  "... said Employers and Signatory Association act for and on behalf of any other Individual Employer who is required by any Collective Bargaining Agreement, any participation agreement or this Trust Agreement to make Contributions to the Fund or who in fact makes one (1) or more Contributions to the Fund."

     c.   Section 17.02 states: "Any Individual Employer ... who in fact makes one (1) or more Contributions to the Trust with the approval of the Board of Trustees, assumes and shall be bound by all of the obligations imposed by this Trust Agreement and the applicable Labor Agreement upon the Individual Employer, and is entitled to participation rights under this Trust Agreement and is otherwise subject thereto in all respects."

23.    There may be other portions of the Trust Agreements that have not been quoted or stated in these paragraphs that may be relevant to this Amended Complaint and this lawsuit and the Trust reserves the right to draw upon such language if needed.

Labor Agreement Negotiations

24.    From 2013-2015, Brady and the Union negotiated new Labor Agreements for each of these Plants with slightly different wages and pension provisions.

25.    Pursuant to the terms of the Brady and Mission CBAs and the signed Memorandums of Agreement, the Brady and Mission CBAs were in effect during the negotiations.

26.    During negotiations, Eric Brady, owner and CEO of Brady, asked about the apprentices and said he wanted to hire apprentices as a cost saving measure because they are paid less than a journeyman.

27.    On August 6, 2015, Brady provided the Union with a Last, Best and Final offer for successor bargaining agreements covering each of the Plants, including the Plants formerly owned and operated by Mission.

28.    Part of Brady's offer, the Article covering the annual assessment to the JATC (Article 23.02), was missing. This was explained to the Union's membership at a meeting during which the proposed CBA was ratified. The membership ratified the CBA based on the

understanding that it would require payment in an amount acceptable to the JATC for each Brady employee covered by the CBA, but the amount in question was not specifically identified during the ratification meeting.

29.     After the Agreement was ratified, Brady immediately began following the terms of the Agreement including paying the higher wages and the differences in rates for the health benefits as of the pay period following ratification.

30.     Brady also paid the 2015 annual assessment to the JATC in a check dated August 21, 2015 at the rate of $603.20 per the number of operating engineers on the payroll as of June 30, 2015.

31.     Brady paid all annual payments to the JATC in accordance with Article 38 of the Brady and Mission CBAs from 2012-2015.

32.     In September 2015, after the terms of the new CBAs had been presented to and ratified by Brady's employees, the Union began to compile language from the relevant provisions into final written CBAs that the membership had ratified. The draft CBAs included Article 23.02 and stated annual assessment rates payable to the JATC, consistent with the rates found in the Brady CBA.  On or about September 25, 2015, drafts of the CBAs were provided to Brady.

33.     On or about October 16, 2015, Brady provided notice of certain errors in the CBA drafts and objected to Article 23.02 being included.  Brady said that it had rejected all of the Union's open proposals regarding the rates, but in fact the Union had never proposed such rates.

34.     Thereafter, on or about November 12, 2015, the Union amended the draft CBAs and inserted the rates from Brady's last proposal (made during a September 9, 2014 negotiating session) into Article 23.02 of the CBAs.

35.     Brady's last proposal of Article 23.02 made during the September 9, 2014 session

-11-

states:

Contributions.

Effective September 2011, the Employer shall remit to the Southern Nevada Operating and Maintenance Engineers Apprentice and Training Trust Fund _____AMOUNT_____, multiplied by the number of operating engineers on the payroll as of the thirtieth (30th) day of June immediately preceding.

Effective September 2014, the Employer shall remit to the Southern Nevada Operating and Maintenance Engineers Apprentice and Training Trust Fund Six Hundred and Eighty-Six Dollars and Forty Cents ($686.40), multiplied by the number of operating engineers on the payroll as of the thirtieth (30th) day of June immediately preceding.

Effective September 2015, the Employer shall remit to the Southern Nevada Operating and Maintenance Engineers Apprentice and Training Trust Fund Seven Hundred Seven Dollars and Twenty Cents ($707.20), multiplied by the number of operating engineers on the payroll as of the thirtieth (30th) day of June immediately preceding.

36.    On or about December 14, 2015, Brady agreed to all the changes in the draft CBAs except the inclusion of Brady's September 9, 2014 proposal to the Union regarding Article 23.02. Brady stated that it had rejected all of the Union's proposals regarding Section 23.02 and the JATC assessment. In reality, the Union had made no such proposals, but instead had simply accepted Brady's September 9, 2014 proposal on the subject, which Brady had never withdrawn.

37.    On January 6, 2016, the Union delivered CBAs to Brady for signature, as follows: 1) Labor Agreement between Brady Linen Services, LLC (Lindell Plant) and International Union of Operating Engineers Local 501, AFL-CIO, Effective from August 13, 2015 through August 31, 2018; 2) Labor Agreement between Brady Linen Services, LLC (Losee Plant) and International Union of Operating Engineers Local 501, AFL-CIO, Effective from August 13, 2015 through August 31, 2018; 3) Labor Agreement between Brady Linen Services, LLC (Mayflower Plant) and International Union of Operating Engineers Local 501, AFL-CIO, Effective from August 13, 2015 through August 31, 2018; and 4) Labor Agreement between

Brady Linen Services, LLC (Foremaster Plant) and International Union of Operating Engineers Local 501, AFL-CIO, Effective from August 13, 2015 through August 31, 2018 (hereafter collectively "New Labor Agreements").

38.    The New Labor Agreements contained Section 23.02 based on Brady's last proposal (September 9, 2014). The rate came from Brady's never-withdrawn proposal. Brady made its annual payment to the JATC on August 21, 2015, after the proposed Agreement had been ratified by the Union.

39.    On or about February 9, 2016, Brady signed and returned the New Labor Agreements to the Union with the language regarding payment to the JATC for annual assessments completely marked out with pen both under Article 23 and on the Table of Contents, page iv. with Mr. Brady's initials next to the language that was redacted.

40.    Brady made no attempt to alter or remove the language regarding the JATC or Brady's duties in dealing with the JATC from the New Labor Agreements, all of which contain the following provisions:

> a. Article 23.01 provides that: "**Agreement and Declaration of Trust**.  The Employer agrees to be bound by the Agreement and Declaration of Trust establishing the Southern Nevada Operating and Maintenance Engineers Apprenticeship and Training Trust Fund."
>
> b. Article 23.03 provides that: "**Employment of Apprentices**.  Each Employer who employs at least ten (10) but less than twenty (20) engineers, excluding apprentices, may, employ said number of engineers, and employ at least one (1) apprentice engineer.  Further, each Employer who employs twenty (20) or more engineers, excluding apprentices, shall, at all times he employs said number of engineers, employ at least two (2) apprentice engineers."

c. Article 16.02 (d) provides that "the apprentice shall be subject to the terms and conditions of the 'Apprenticeship Standards of the Southern Nevada Operating and Maintenance Engineer Training and Trust Fund', which provide that he shall receive such instruction and experience in all phases of the work as are necessary to become a practical and skilled mechanic."

NLRB Actions

41.     When the Union received the signed New Labor Agreements with portions redacted by Brady, the Union filed a charge against Brady with the National Labor Relations Board ("NLRB") on February 10, 2016 (Case No. 28-CA-169494) ("Union Charge") for failing to sign the New Labor Agreements as ratified by the Union (with the redacted portions intact).

42.     On February 22, 2016, Brady filed a similar charge against the Union with the NLRB (Case No. 28-CB-170340) ("Brady Charge") regarding the same set of facts but alleging that the Union should have signed the New Labor Agreements, as redacted by Brady.

43.     Both the Brady Charge and the Union Charge were denied by the NLRB, as the NLRB believed that the parties had not reached an agreement on all matters and that both sides had an obligation to continue bargaining under the requirements of the National Labor Relations Act ("NLRA").

44.     Both the Union and Brady appealed the NLRB decision to deny their respective Charges.

45.     In September of 2016, the NLRB rescinded its earlier denials for both the Union Charge and the Brady Charge and re-opened both cases.

46.     In November 2016, the Union's Charge was denied again and was subsequently denied on appeal, and the Employer's Charge (Case No. 28-CB-170340) proceeded to a trial held on February 7, 2017.

-14-

47.     As of the date of filing this Amended Complaint, the NLRB has not rendered a decision on the matter.

48.     As of the date of filing this Amended Complaint, the Union has not signed the New Labor Agreements as redacted by Brady.

Assessment of Delinquency

49.     Consistent with the Brady and Mission CBAs, Memorandums of Agreement, the New Labor Agreements and Trust Agreement, Brady continued to pay the annual assessment to the JATC through 2015.

50.     Since 2016, the JATC has timely demanded that Brady pay the annual assessment based upon Brady's Operating Engineers on payroll as of the end of that calendar year ("Assessment Delinquency").

51.     However, Brady has failed to pay any Assessment Delinquency to the JATC since payment for the 2015 annual assessment.

52.     Consistent with the Brady and Mission CBAs, Memorandums of Agreement, New Labor Agreements and Trust Agreement, the JATC has initiated this legal proceeding to collect the Assessment Delinquency charged by the JATC for all amounts due and owing after 2015 from Defendant Brady.

53.     No matter what the NLRB decides in ruling on Brady's Charge (Case No. 28-CB-170340), which decision will not be binding on the JATC, Brady must pay the JATC the amount of the Assessment Delinquency accrued after 2015, and the United States District Court must require Brady to pay the claims asserted by the JATC, based on one or more of the following legal theories:

a.  If the NLRB finds that the New Labor Agreements, as ratified by the Union and presented to Brady, are enforceable, then Brady is under an obligation to

-15-

pay the annual assessment to the JATC pursuant to Article 23 and Section 23.02 contained therein; or

b. If the NLRB finds that there was no meeting of the minds regarding the New Labor Agreements, then under the NLRA, 29 U.S.C. § 151-169, Brady and the Union must maintain the status quo throughout the bargaining process, the terms of the Brady and Mission CBAs are still in effect and require payment to the JATC until the existing CBA is either replaced by a newer CBA or it is properly terminated (which has never occurred), so Brady remains obligated to pay the annual assessment to the JATC pursuant to Article 38 of the 2009-2011 CBAs, as extended through various Memorandums of Agreement; or

c. If the NLRB finds that the New Labor Agreements, as redacted by Brady and without Article 23.02, are enforceable, then Brady is still bound to pay the annual assessment charged by the JATC under the express terms of the Trust Agreements, as required by Section 23.01 of the New Labor Agreements. This result is required by the express Articles of the Trust Agreements provided above in paragraphs 19-23, which make the Trustees' decisions binding on participating employers, declare that Trustees have plenary power to resolve all questions related to the Trust Agreement, and require employers bound to the Trust Agreements to contribute to the JATC. The obligation to contribute under the Trust Agreements exists independent of any obligation found in a CBA. The New Labor Agreements confirm that Brady is bound by the Trust Agreements, and pursuant to the authority recognized by the Trust Agreements, the Trustees have determined that Brady must pay the same

1  annual assessment rates that it charges to all other employers whose
2  employees are similarly entitled to receive training from the JATC.

3  **FIRST CAUSE OF ACTION**
4  [Breach of Contract – 29 U.S.C. § 1132(a)(3)]

5  54.     The Plaintiff herein restates and realleges the above allegations.

6  55.     ERISA allows a fiduciary to seek, through an action commenced in the U.S.
7  District Courts, to enjoin any act or practice which violates any the terms of an ERISA plan, to
8  obtain other appropriate relief, to redress such violations, and to enforce any provisions of the
9  terms of an ERISA benefit plan.
10

11  56.     As fiduciaries of the Trust, the Trustees are required to enforce the Trust
12  provisions of the Brady and Mission CBAs, Memorandums of Agreement, New Labor
13  Agreements and the Trust Agreements, and the JATC may seek, through this lawsuit, to require
14  that Brady pay the Annual Assessment set by the Trustees.

15  57.     By virtue of the terms of the Brady and Mission CBAs, Memorandums of
16  Agreement, New Labor Agreements and Trust Agreements, Defendant Brady is required to pay
17  Annual Assessment as alleged herein and is bound to the terms of the Trust Agreements.
18

19  58.     According to the Brady and Mission CBAs, Memorandums of Agreement, New
20  Labor Agreements, Trust Agreements and applicable law, Defendant has breached the express
21  terms of the Brady and Mission CBAs, Memorandum of Agreements, New Labor Agreements
22  and Trust Agreements by failing to immediately and fully comply with and pay the Annual
23  Assessment to the Plaintiff.
24

25  59.     Brady's failure to properly and timely pay the Assessment Delinquency, as
26  detailed in the preceding paragraphs, constitutes a violation of ERISA, and a breach of duties

27

28

imposed on Brady by the Brady and Mission CBAs, Memorandums of Agreement, New Labor Agreements and the JATC's Trust Agreements.

60.     Brady is contractually delinquent to the Trust and is obligated by the Brady and Mission CBAs, Memorandum of Agreements, New Labor Agreements and Trust Agreements, and ERISA, 29 U.S.C. §§ 1132(g)(2) and 1145, to pay the Assessment Delinquency, accrued interest, liquidated damages and attorney's fees and costs, in an amount to be proven at trial.

61.     As a result of Brady's violation of the terms of the Brady and Mission CBAs, Memorandums of Agreement, New Labor Agreements and Trust Agreements, Plaintiff has sustained damages and is entitled to an order enforcing the terms of the Brady and Mission CBAs, Memorandum of Agreements, New Labor Agreements and Trust Agreements and requiring Defendant to pay the Assessment Delinquency, plus accruing interest, attorneys' fees, and liquidated damages.

62.     Defendant's actions, in failing to respond to multiple demands for the Assessment Delinquency, have required the Plaintiff to retain legal counsel and initiate this lawsuit to enforce the Plaintiff's rights under the Brady and Mission CBAs, Memorandum of Agreements, New Labor Agreements and Trust Agreements, which would not have been necessary if Defendant had provided a timely response and paid the Assessment Delinquency.

63.     Pursuant to 29 U.S.C. § 1132(g)(1), the Court must award reasonable attorney's fees and costs to the Plaintiff.

**SECOND CAUSE OF ACTION**
[Equitable Relief – 29 U.S.C. § 1132(a)(3)(B)]

64.     The Plaintiff herein restates and realleges the above allegations.

65.     The Plaintiff has the right to enforce the terms of the Brady and Mission CBAs, Memorandums of Agreement, New Labor Agreements and Trust Agreements and to require that Defendant pay the Assessment Delinquency.

66.     The regular and prompt payment of the Annual Assessment is essential to the maintenance of the JATC and an employer's failure to make timely contributions can adversely impact the financial health and stability of the JATC's training plan.

67.     The actions of Defendant in failing to comply or to ensure compliance with the Brady and Mission CBAs, Memorandums of Agreement, New Labor Agreements and Trust Agreements in paying the Assessment Delinquency, as described herein, constitute violations of ERISA and are damaging to the well being of the JATC.

68.     The contract breaches and violations of ERISA and the LMRA harm the Plaintiff, because they place at risk the JATC's ability to provide required education and training to its apprentices.

69.     The Plaintiff's remedies at law are not sufficient to adequately compensate the Plaintiff or its apprentices from past harm caused by said violation, or to protect the JATC from the harm or threat of harm caused by a similar future violation.

70.     Plaintiff is likely to prevail on the merits of its claims.

71.     Plaintiff is entitled to equitable relief affirmatively compelling Defendant to pay the Assessment Delinquency, plus accruing interest and liquidated damages for the benefit of Plaintiff.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays for Judgment against Defendant, as follows:

1.  For the Court's Order compelling Defendant to pay the Assessment Delinquency;

2. For liquidated damages in amounts to be proven at trial;

3. For accrued interest on the Assessment Delinquency from its due date until paid;

4. For damages for breach of contract;

5. For Plaintiff's reasonable attorney's fees and costs of suit incurred herein;

6. For such additional relief as may be provided under 29 U.S.C. § 1132;

7. For such additional equitable relief as the Court may deem appropriate under 29 U.S.C. § 1132(a)(3); and

8. For such additional relief as this Court may deem just and proper.

Dated this 27th day of July, 2017.

CHRISTENSEN JAMES & MARTIN

By: ___ */s/ Laura J. Wolff* _____
Laura J. Wolff, Esq.
Nevada Bar No. 6869
7440 W. Sahara Avenue
Las Vegas, Nevada 89117
Telephone:  (702) 255-1718
Facsimile:  (702) 255-0871
Email: ljw@cjmlv.com
*Attorneys for the Southern Nevada*
*Operating and Maintenance Engineers*
*Apprenticeship and Training Trust*
*Fund*

-20-