UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| THE SOUTHERN NEVADA OPERATING AND MAINTENANCE ENGINEERS APPRENTICESHIP AND TRAINING TRUST FUND, by and through its designated Fiduciary Tom O'Mahar,<br><br>Plaintiff(s),<br><br>v.<br><br>BRADY LINEN SERVICES, LLC,<br><br>Defendant(s). | Case No. 2:17-CV-115 JCM (PAL)<br><br>ORDER |

Presently before the court is defendant Brady Linen Services, LLC's ("Brady") motion to dismiss. (ECF No. 11). Plaintiff Southern Nevada Operating and Maintenance Engineers Apprenticeship and Training Trust Fund ("the trust" or "the SNOME trust") filed a response (ECF No. 12), to which plaintiff replied (ECF No. 13).

**I.      Facts**

Defendant owns and operates four dry cleaning facilities in Las Vegas. (ECF No. 11 at 2). Defendant is a party to a labor agreement ("the CBA") with the International Union of Operating Engineers, Local No. 501 ("the union"). (ECF No. 24 at 2–3). The SNOME trust (the plaintiff in this case) was created pursuant to a written declaration of trust between the union and the employers who have agreed to or otherwise become bound by collective bargaining agreements with the union. *Id.* at 2.

The union and defendant have entered into multiple agreements since 2009. In 2009, defendant entered into a CBA with the union ("the 2009 Brady CBA"), which governed the two

plants that defendant owned at the time ("Lindell" and "Losee"). (ECF No. 24 at 3–4). Article 38 of the 2009 Brady CBA states,

> Contributions. Effective September 2009, and annually thereafter, the Employer shall to remit [sic] the Southern Nevada Operating and Maintenance Engineers Apprentice and Training Trust Fund the sum of Six Hundred Three Dollars and Twenty Cents ($603.20) multiplied by the number of engineers on his payroll as of the thirtieth day of June immediately preceding.

(ECF No. 11-2 at 34). Article 40 states that the agreement became effective on September 1, 2009 and would remain active through August 31, 2011, and thereafter from year to year unless terminated (via appropriate written notice) by either party. *Id.* at 36.

The parties signed an extension to the agreement on August 29, 2011, which provided for continuance of the terms of the existing 2009 Brady CBA until the parties completed a new collective bargaining agreement. (ECF No. 24 at 4). The parties signed a second agreement six months later containing the same extension language. *Id.*

In July 2011, defendant purchased two facilities ("Mayflower" and "Foremaster") from Mission of Nevada, Inc. d/b/a Mission Industries ("Mission"). *Id.* at 5. The purchase included assumption of the rights and responsibilities attendant to Mission's collective bargaining agreement with the union ("the 2009 Mission CBA"). *Id.* The 2009 Mission CBA contained many identical provisions to the 2009 Brady CBA, including identical effective dates and obligations to the trust, with one key difference being a lower per-engineer payment to the trust. (ECF No. 11-3).

In addition to the contribution provisions, Article 38 of both CBAs further stated that each employer who enters into the CBA "shall become a party to the Agreement and Declaration of Trust establishing the [SNOME trust]." (ECF No. 24 at 4). During the time period covered by the amended complaint, two relevant trust agreements were in effect: the revised agreement and declaration of trust, and the second restated agreement and declaration of trust for [SNOME]. *Id.* at 6–7. Each agreement contained provisions related to payments as required by collective bargaining or participation agreements. *Id.* at 7–10.

Between 2013 and 2016, the union and defendant negotiated (or at least attempted to negotiate) new collective bargaining agreements for defendant's four laundry facilities. *Id.* at 10.

On September 9, 2014, the parties participated in a negotiating session, whereby defendant proposed a provision creating an assessment obligation to the SNOME trust (the provision in the new collective bargaining agreements that creates an assessment obligation to the trust is commonly referred to in the pleadings as "Article 23.02"). *Id.* at 11. The draft version created a tiered payment scheme, whereby from September 2011 to August 2014 defendant would pay SNOME an amount to be determined, from September 2014 to August 2015 defendant would pay SNOME $686.40 per engineer, and from September 2015 thereon, defendant would pay SNOME $707.20 per engineer, based on the number of engineers on defendant's payroll as of June 30th of the relevant period. *Id.* at 11–12.

On August 6, 2015, defendant submitted its "Last, Best and Final offer" for four new bargaining agreements that would cover each facility separately. *Id.* at 10. This offer did not contain an Article 23.02. *Id.* Sometime after August 6, 2015, defendant's offer was submitted to and ratified by the union's membership, with knowledge that Article 23.02 was not contained within the offer. *Id.* at 10–11.

The union thereafter compiled language from relevant provisions that the union membership had ratified into final draft collective bargaining agreements. *Id.* at 11. These drafts included an Article 23.02 as drafted by the union. *Id.* On October 16, 2015, defendant notified the union of errors in the drafts, including the presence of Article 23.02. *Id.* On November 12, 2015, the union amended the drafts to include the rates from Brady's September 9, 2014 proposal into a revised Article 23.02. *Id.* On December 14, 2015, Brady again objected to the inclusion of Article 23.02, but otherwise agreed to the draft collective bargaining agreements. *Id.* at 12.

On January 6, 2016, the union delivered four collective bargaining agreement drafts to defendant for signature, with one covering each of defendant's plants. *Id.* On February 9, 2016, defendant signed and returned the agreements to the union with a significant alteration: defendant crossed out the language creating an obligation to pay assessments to the SNOME trust in Article 23 and the corresponding table of contents entry. *Id.* at 13.

On February 10, 2016, after receipt of the signed but amended draft labor agreements, the union filed an unfair labor practices charge against defendant with the National Labor Relations

Board ("NLRB"). *Id.* at 14. The union asserted that defendant's failure to sign the draft agreements without edit constituted an unfair labor practice. *Id.* On February 22, 2016, defendant filed a similar charge, alleging that the union's failure to sign the edited draft labor agreements constituted an unfair labor practice. *Id.*

The NLRB denied both the union and defendant's charges. *Id.* In September 2016, after appeal, the NLRB rescinded both denials. *Id.* The NLRB subsequently denied the union charge, and on appeal upheld the denial. *Id.* Defendant's charge proceeded to trial. *Id.*

On October 11, 2016, plaintiff sent defendant an invoice and payment demand for $24,128.00, based on defendant's employment of 40 operating engineers as of June 30, 2016. *Id.* at 15. Plaintiff made other demands for payment both prior to and subsequent to the demand letter. *Id.* Defendant has not paid the invoice, which is the primary subject of this litigation. *Id.*

On January 12, 2017, plaintiff filed its complaint in this court. (ECF No. 1). On February 27, 2017, plaintiff filed its first amended complaint. (ECF No. 9). On March 17, 2017, defendant filed its motion to dismiss. (ECF No. 11).

On July 20, 2017, administrative law judge Dickie Montemayor ("the ALJ") issued a decision on defendant's NLRA charge ("the NLRB decision"), holding that the union violated the NLRA by refusing to execute a collective bargaining agreement with defendant. (ECF No. 21-1 at 9). The ALJ ordered that the union execute a collective bargaining agreement with defendant and compensate any of defendant's employees who suffered losses as a result of the union's failure to execute an agreement. *Id.* at 10.

On August 4, 2017, plaintiff filed its second amended complaint. (ECF No. 24).

**II.     Legal Standard**

   *i.     Subject matter jurisdiction*

Federal courts are courts of limited jurisdiction. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes of Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989). Thus, federal subject matter jurisdiction must

exist at the time an action is commenced. *Mallard Auto. Grp., Ltd. v. United States*, 343 F. Supp. 2d 949, 952 (D. Nev. 2004).

Federal Rule of Civil Procedure 12(b)(1) allows defendants to seek dismissal of a claim or action for a lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is appropriate if the complaint, considered in its entirety, fails to allege facts on its face sufficient to establish subject matter jurisdiction. *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 984–85 (9th Cir. 2008).

Although the defendant is the moving party in a 12(b)(1) motion to dismiss, the plaintiff is the party invoking the court's jurisdiction. As a result, the plaintiff bears the burden of proving that the case is properly in federal court to survive the motion. *McCauley v. Ford Motor Co.*, 264 F.3d 952, 957 (9th Cir. 2001) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). More specifically, the plaintiff's pleadings must show "the existence of whatever is essential to federal jurisdiction, and, if [plaintiff] does not do so, the court, on having the defect called to its attention or on discovering the same, must dismiss the case, unless the defect be corrected by amendment." *Smith v. McCullough*, 270 U.S. 456, 459 (1926).

In moving to dismiss under Rule 12(b)(1), the challenging party may either make a "facial attack," confining the inquiry to challenges in the complaint, or a "factual attack" challenging subject matter on a factual basis. *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). For a facial attack, the court assumes the truthfulness of the allegations, as in a motion to dismiss under Rule 12(b)(6). *Trentacosta v. Frontier Pac. Aircraft Indus., Inc.*, 813 F.2d 1553, 1559 (9th Cir. 1987). By contrast, when presented as a factual challenge, a Rule 12(b)(1) motion can be supported by affidavits or other evidence outside of the pleadings. *United States v. LSL Biotechs.*, 379 F.3d 672, 700 n.14 (9th Cir. 2004) (citing *St. Clair v. City of Chicago*, 880 F.2d 199, 201 (9th Cir. 1989)).

*ii.     Failure to state a claim upon which relief can be granted*

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

"Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 678–79. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678.

Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678.

Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks omitted). When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The *Starr* court stated, in relevant part:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id.*

. . .

**James C. Mahan**
**U.S. District Judge**

- 6 -

## III. Discussion

Defendant's motion to dismiss asserts that the court lacks subject matter jurisdiction to consider the instant dispute and that plaintiff's complaint fails to state a claim upon which relief can be granted.

### i. *Subject matter jurisdiction*

Defendant asserts that this controversy is currently being adjudicated (or has been adjudicated) in front of the NLRB and that the NLRB has exclusive jurisdiction to hear the dispute. Plaintiff responds that this court has exclusive subject matter jurisdiction over the action as it is a civil action brought by a fiduciary to enforce unpaid ERISA fringe benefit payments.

The ERISA statute, 29 U.S.C. § 1145, requires employers who are so obligated to make contributions to multiemployer plans under the terms of the plan or under the terms of collective bargaining agreements. *Id.* The statute creates a cause of action for fiduciaries of such multiemployer plans. 29 U.S.C. § 1132(a)(3). The statute also governs jurisdiction, as 29 U.S.C. § 1132 (e)(1) reads,

> Except for actions under subsection (a)(1)(B) of this section,[1] the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, fiduciary, or any person referred to in section 1021(f)(1) of this title.

*Id.*; *see Martin v. Garman Constr. Co.*, 945 F.2d 1000, 1003 (7th Cir. 1991) ("Enforcement claims by a fiduciary under ERISA may be brought in federal court only.").

Once an employer's contractual obligations cease, and a fund attempts to collect "delinquent contributions," the ERISA statute no longer controls questions of jurisdiction. *See Laborers Health and Welfare Trust Fund for Nor. Cal. v. Advanced Lightweight Concrete Co, Inc.*, 484 U.S. 539, 548–49 (1988) ("both the text and the legislative history of §§ 515 and 502(g)(2) provide firm support for the Court of Appeals' conclusion that this remedy is limited to the connection of "promised contributions" and does not confer jurisdiction on district courts to determine whether an employer's unilateral decision to refuse to make postcontract contributions constitutes a violation of the NLRA.").

---

[1] Subsection (a)(1)(B) relates to certain participant/beneficiary actions that are not the subject of this litigation.

James C. Mahan
U.S. District Judge

In *Advanced Lightweight*, an employer who no longer had a contractual agreement to support an ERISA trust fund ceased making payments to the fund. *Id.* at 542. The fund sued in federal court, alleging violations of the NLRA and urging that the ERISA statute granted federal courts jurisdiction over the action. *Id.* at 542–43. The district court granted summary judgment for the employer, holding that the NLRB had exclusive jurisdiction over the action, and the Ninth Circuit court of appeals affirmed. *Id.* at 544.

The Supreme Court granted certiorari and affirmed the decisions of the lower courts. *Id.* at 545. The Court held that the NLRA governs cases where an employer ceases to make <u>post-contractual</u> payments to an ERISA fund, and therefore jurisdiction over those cases is vested in the NLRB and not in federal courts. *Id.* at 548, 553.

Here, federal courts have exclusive subject matter jurisdiction over the type of claim plaintiff raises in its complaint. The SNOME trust's claim is an action by a fiduciary to enforce payment under the terms of an ERISA plan. Unlike the plaintiff in *Advanced Lightweight*, the SNOME trust alleges that its rights to the 2016 payment are based on a then-existing contract between the parties. This falls within the scope of exclusive federal court jurisdiction. *See* 29 U.S.C. 1132(e)(1); *Garman Constr. Co.*, 945 F.2d at 1003.

Defendant's argument that the action is a collateral attack on the concurrent NLRB proceedings is without merit. ERISA claims are distinct from unfair labor practices claims. *Garman Constr. Co.*, 945 F.2d at 1004. Here, the unfair labor practices charges before the NLRB vary in two significant respects from the ERISA claims in front of this court.

First, the NLRB claim asks different legal questions from the current ERISA dispute. The focus of the NLRB claim is whether either of the parties violated the National Labor Relations Act ("NLRA") by declining to agree to collective bargaining agreements. In contrast, the focus of the ERISA claim is whether a contractual agreement existed at the time the 2016 payment was due and whether defendant failed to pay the assessment.[2] As plaintiff's also accurately note, the

---

[2] Although this court will not decide herein whether to give preclusive effect to the NLRB's findings of fact and conclusions of law, the decision does not contain a factual finding regarding whether an agreement existed at the time plaintiff alleges payment was due. (ECF No. 21-1). Holding that an agreement should have been executed on February 9, 2016, and that the union's
James C. Mahan
U.S. District Judge

availability of defenses to an ERISA action is far more limited than the availability of such defenses in NLRB disputes. (ECF No. 12 at 7–8); *see Southern Cal. Retail Clerks Union v. Bjorklund*, 728 F.2d 1262, 1265 (9th Cir. 1984) (recognizing the only legal defense to an ERISA action is proof that an employer's promise to make contributions is itself illegal); *Garman Constr. Co.*, 945 F.2d at 1005 ("many of the defenses available under the NLRA or under traditional contract law do not fly under ERISA").

Second, the plaintiff is not an entity in the NLRB litigation. Trust authorities set up via a collective bargaining agreement are distinct from the union and its representatives. *Waggoner v. Dallaire*, 649 F.2d 1362, 1368 (9th Cir. 1981). Here, the union litigated against defendant in the NLRB proceedings, and it cannot be said that the union acted on behalf of the trust. *See id.*

Defendant's argument that if the court were to retain jurisdiction over the action then duplicitous litigation would result is incorrect. As the court noted in *Garman*, district courts may invoke the doctrine of collateral estoppel to curb duplicitous litigation and afford adequate deference to agency adjudication of factual matters.[3] 945 F.2d at 1004.

Finally, the holding in *Advanced Lightweight* does not defeat the exercise of jurisdiction over the instant matter. 484 U.S. at 547. The Court in *Advanced Lightweight* held that post-contractual obligations are actionable under the NLRA, while noting that violations of contractual obligations are actionable under ERISA and in federal court. *Id.* at 547–49. Here, plaintiff's claim is for breach of contract, and the complaint alleges a valid contractual relationship existed between the parties. (ECF No. 24). Therefore, the holding in *Advanced Lightweight* does not affect the court's jurisdiction over this case. *See* 484 U.S. at 547.

*ii. Failure to state a claim upon which relief can be granted*

Defendant asserts that plaintiff's complaint fails to state a claim upon which relief can be granted. Defendant argues that plaintiff's contractual claim is not based upon a current contract between the parties, but is rather based upon prior contracts between the parties and on a provision

---

failure to do so constitutes a violation of the NLRA is not the same as holding that an agreement was executed on that date.

[3] The court does not decide at this time whether to give preclusive effect to the ALJ decision. *See* fn. 2, *supra.*

that the union attempted to put into the current contract but that never became legally operative. Plaintiff asserts that its contractual cause of action states a claim upon which relief can be granted because plaintiff may compel payment by defendant of fringe benefits based on either the relevant provisions in the current or former CBAs or the relevant provision in the trust agreements.

As the case is before the court on defendant's motion to dismiss, the court assumes that all plausible factual allegations in the complaint are true for purposes of determining whether the complaint states a claim upon which relief can be granted. *Iqbal*, 556 U.S. at 678–79.

Plaintiff states a claim upon which relief can be granted. Per plaintiff's complaint, the defendant was bound by the 2009 collective bargaining agreements, which were not terminated prior to September 1, 2016 by proper notice or by a subsequent agreement. (ECF No. 24). The substance of the collective bargaining agreements, as stated in plaintiff's complaint, impose upon defendant an obligation to pay assessments to the SNOME trust. *Id.* at 4–6. Therefore, plaintiff has stated a claim upon which relief may be granted, and the complaint survives a motion to dismiss. *Cf. Twombly*, 550 U.S. at 570.

As plaintiff's response notes, defendant may be liable to plaintiff for ERISA violations notwithstanding the NLRB decision. *See Martin v. Garman Constr. Co.*, 945 F.2d 1000, 1006 (7th Cir. 1991) ("The NLRB's order regarding the Union's 8(a)(1) and 8(a)(5) claims did not preclude the Funds' ERISA claim in district court and did not resolve the issue of ERISA liability."). Therefore, defendant's assertions regarding the significance NLRB decision do not persuade the court that plaintiff's complaint should be dismissed for failure to state a claim.

**IV.     Conclusion**

This court has subject matter jurisdiction over the action, as the relevant statute governing plaintiff's ERISA claim grants exclusive jurisdiction over such actions to federal courts. Further, plaintiff's complaint, which is based on the existence of contractual obligations to pay ERISA assessments to plaintiff, states a claim upon which relief can be granted.

. . .

. . .

. . .

James C. Mahan
U.S. District Judge

- 10 -

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendant's motion to dismiss (ECF No. 11) be, and the same hereby is, DENIED.

DATED October 13, 2017.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**