UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| THE SOUTHERN NEVADA OPERATING AND MAINTENANCE ENGINEERS APPRENTICESHIP AND TRAINING TRUST FUND, by and through its designated Fiduciary Tom O'Mahar,<br><br>Plaintiff(s),<br><br>v.<br><br>BRADY LINEN SERVICES, LLC,<br><br>Defendant(s). | Case No. 2:17-CV-115 JCM (PAL)<br><br>ORDER |

Presently before the court is plaintiff Southern Nevada Operating and Maintenance Engineers Apprenticeship and Training Trust Fund ("plaintiff"). (ECF No. 33). Defendant Brady Linen Services, LLC ("defendant") filed a response (ECF No. 36), to which plaintiff replied (ECF No. 37).

Also before the court is defendant's motion for summary judgment. (ECF No. 34). Plaintiff filed a response (ECF No. 35), to which defendant replied (ECF No. 38).

Also before the court is defendants motion for leave to file supplemental exhibit to its motion for summary judgment. (ECF No. 39). Plaintiff filed a response. (ECF No. 40). Defendant did not file a reply, and the time for doing so has since passed.

**I.  Facts**

Defendant owns and operates four dry cleaning facilities in Las Vegas. (ECF No. 11 at 2). Defendant is a party to a labor agreement ("the CBA") with the International Union of Operating Engineers, Local No. 501 ("the union"). (ECF No. 24 at 2–3). The SNOME trust (the plaintiff in this case) was created pursuant to a written declaration of trust between the union and the

employers who have agreed to or otherwise become bound by collective bargaining agreements with the union. *Id.* at 2.

The union and defendant have entered into multiple agreements since 2009. In 2009, defendant entered into a CBA with the union ("the 2009 Brady CBA"), which governed the two plants that defendant owned at the time ("Lindell" and "Losee"). (ECF No. 24 at 3–4). Article 38 of the 2009 Brady CBA states,

> Contributions. Effective September 2009, and annually thereafter, the Employer shall to remit [sic] the Southern Nevada Operating and Maintenance Engineers Apprentice and Training Trust Fund the sum of Six Hundred Three Dollars and Twenty Cents ($603.20) multiplied by the number of engineers on his payroll as of the thirtieth day of June immediately preceding.

(ECF No. 11–2 at 34). Article 40 states that the agreement became effective on September 1, 2009 and would remain active through August 31, 2011, and thereafter from year to year unless terminated (via appropriate written notice) by either party. *Id.* at 36.

The union and defendant signed an extension to the agreement on August 29, 2011, which provided for continuance of the terms of the existing 2009 Brady CBA until defendant and the union completed a new collective bargaining agreement. (ECF No. 24 at 4). Defendant and the union signed a second agreement six months later containing the same extension language. *Id.*

In July 2011, defendant purchased two facilities ("Mayflower" and "Foremaster") from Mission of Nevada, Inc. d/b/a Mission Industries ("Mission"). *Id.* at 5. The purchase included assumption of the rights and responsibilities attendant to Mission's collective bargaining agreement with the union ("the 2009 Mission CBA"). *Id.* The 2009 Mission CBA contained many identical provisions to the 2009 Brady CBA, including identical effective dates and obligations to the trust, with one key difference being a lower per-engineer payment to the trust. (ECF No. 11–3).

In addition to the contribution provisions, Article 38 of both CBAs further stated that each employer who enters into the CBA "shall become a party to the Agreement and Declaration of Trust establishing the [SNOME trust]." (ECF No. 24 at 4). During the time period covered by the amended complaint, two relevant trust agreements were in effect: the revised agreement and declaration of trust ("the revised agreement"), and the second restated agreement and declaration

of trust for [SNOME] ("the second restated agreement"). *Id.* at 6–7. Each agreement contained provisions related to payments as required by collective bargaining or participation agreements. *Id.* at 7–10. The revised agreement was in effect from on or about 1998 through March 11, 2013, when the trustees signed the second restated agreement. (ECF No. 33–3). Since that date, the second restated agreement has been the operative trust document. *Id.*

Between 2013 and 2016, the union and defendant negotiated (or at least attempted to negotiate) new collective bargaining agreements for defendant's four laundry facilities. *Id.* at 10. On September 9, 2014, the union and defendant participated in a negotiating session, whereby defendant and the union contemplated including a revised Article 23.02. *Id.* at 11. However, on August 6, 2015, defendant submitted its "Last, Best and Final offer" for four new bargaining agreements that would cover each facility separately. *Id.* at 10. This offer did not contain an Article 23.02 for any of the four facilities. *Id.*

Sometime after August 6, 2015, defendant's offer was submitted to and ratified by the union's membership, with knowledge that Article 23.02 was not contained within the offer. *Id.* at 10–11. The union thereafter compiled language from relevant provisions that the union membership had ratified into final draft collective bargaining agreements. *Id.* at 11. These drafts included an Article 23.02 as drafted by the union. *Id.*

On October 16, 2015, defendant notified the union of errors in the drafts, including the presence of Article 23.02. *Id.* On November 12, 2015, the union amended the drafts to include the rates from defendant's September 9, 2014 proposal into a revised Article 23.02. *Id.* On December 14, 2015, defendant again objected to the inclusion of Article 23.02, but otherwise agreed to the draft collective bargaining agreements. *Id.* at 12.

Despite the difficulties defendant faced in coming to a final collective bargaining agreement with the union, defendant continued to meet its contribution obligations to the SNOME trust until mid-2015, when defendant made its final payment to the trust. *Id.* at 10. This payment was based upon the number of engineers defendant employed as of June 30 of that year, pursuant to the 2009 CBAs. *Id.*

On January 6, 2016, the union delivered four collective bargaining agreement drafts to defendant for signature, with one covering each of defendant's plants. *Id.* On February 9, 2016, defendant signed and returned the agreements to the union with a significant alteration: defendant again crossed out the language creating an obligation to pay assessments to the SNOME trust in Article 23 and the corresponding table of contents entry. *Id.* at 13.

On February 10, 2016, after receipt of the signed but amended draft labor agreements, the union filed an unfair labor practices charge against defendant with the National Labor Relations Board ("NLRB"). *Id.* at 14. The union asserted that defendant's failure to sign the draft agreements without edit constituted an unfair labor practice. *Id.* On February 22, 2016, defendant filed a similar charge, alleging that the union's failure to sign the edited draft labor agreements constituted an unfair labor practice. *Id.*

The NLRB denied both the union and defendant's charges. *Id.* In September 2016, after appeal, the NLRB rescinded both denials. *Id.* The NLRB subsequently denied the union charge, and on appeal upheld the denial. *Id.* Defendant's charge proceeded to trial. *Id.*

On October 11, 2016, plaintiff sent defendant an invoice and payment demand for $24,128.00, based on defendant's employment of 40 operating engineers as of June 30, 2016. *Id.* at 15. Defendant has not paid the invoice, which is the primary subject of this litigation. *Id.*

On January 12, 2017, plaintiff filed its complaint in this court. (ECF No. 1). On February 27, 2017, plaintiff filed its first amended complaint. (ECF No. 9). On July 12, 2017, plaintiff sent defendant another invoice and payment demand for $23,524.80, this time based on defendant's employment of 40 operating engineers as of June 30, 2017. (ECF No. 33 at 9).

On July 20, 2017, Administrative Law Judge Dickie Montemayor ("the ALJ") issued a decision on defendant's NLRA charge ("the NLRB decision"), holding that the union violated the NLRA by refusing to execute a collective bargaining agreement with defendant. (ECF No. 21–1 at 9). The ALJ ordered that the union execute the collective bargaining agreements that defendant submitted to the union on February 9, 2016, which did not contain the contribution provision (Article 23.02), and compensate any of defendant's employees who suffered losses as a result of the union's failure to execute the agreements. *Id.* at 10.

**James C. Mahan**
**U.S. District Judge**

- 4 -

As a result of the ALJ's decision, defendant and the union have signed four separate collective bargaining agreements (one for each of defendant's four dry cleaning facilities), none of which contains the contribution provision, Article 23.02 ("the 2016 CBAs"). (ECF No. 33–1). The agreements adopted retroactive effective dates spanning from September 1, 2015, to August 31, 2018. *Id.*

On August 4, 2017, plaintiff filed its second amended complaint requesting that the court order defendant to pay its assessment delinquency that has accrued since it ceased making payments to the trust. (ECF No. 24). Now before the court are plaintiff and defendant's cross-motions for summary judgment.[1] (ECF No. 33, 34).

## II. Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to

---

[1] The parties have requested oral argument before the court in their respective motions for summary judgment. (ECF No. 33, 34). However, the parties' requests for oral argument will be denied because the court finds oral argument unnecessary to resolve the motions. *See* LR 78-1 ("All motions may be considered and decided with or without a hearing.").

its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III. Discussion

As a preliminary matter, plaintiff does not oppose defendant's motion for leave to file supplemental exhibit to its motion for summary judgment. *See* (ECF No. 40). Accordingly, the court will grant defendant's motion. The court will now turn to the merits of plaintiff and defendant's cross-motions for summary judgment.

The ERISA statute requires employers who are so obligated to make contributions to multiemployer plans under the terms of the plan or under the terms of collective bargaining agreements. *See* 29 U.S.C. § 1145. The statute creates a cause of action for fiduciaries of such multiemployer plans. 29 U.S.C. § 1132(a)(3).

Contributions from an employer to a benefit trust fund may only be required pursuant to a written agreement that provides "the detailed basis upon which such payments are to be made." 29 U.S.C. § 186(c)(5)(B); *Guthart v. White*, 263 F.3d 1099, 1102 (9th Cir. 2001). A collective bargaining agreement is one such written agreement that may, depending on its terms, obligate an employer to make contributions to a benefit trust fund. 29 U.S.C. § 1392(a).

In its motion for summary judgment, plaintiff argues that the second restated agreement itself obligates defendant to contribute to the SNOME trust at rates determined by the board of trustees, despite the fact that the newly executed 2016 CBAs (which adopted a retroactive effective date of September 1, 2015) do not require plaintiff to make contributions to the trust.[2] (ECF No. 33 at 11).

Plaintiff relies on the Ninth Circuit's ruling in *Santa Monica Culinary Welfare Fund v. Miramar Hotel Corp.* for the proposition that the trustees of an ERISA benefit plan have the power to enforce rights mentioned in the governing trust agreement, even when the collective bargaining agreement is "silent on the issue*." Id. See Santa Monica Culinary Welfare Fund v. Miramar Hotel Corp.*, 920 F.2d 1491 (9th Cir. 1990). Plaintiff argues that because the newly executed 2016 CBAs are "silent" on the issue of contributions, the board of trustees may rely on the trust agreement itself to impose contribution requirements on defendant. (ECF No. 33 at 11).

---

[2] Plaintiff does not dispute that the 2016 CBAs adopted a retroactive effective date. *See generally* (ECF No. 33).

James C. Mahan
U.S. District Judge

- 7 -

Plaintiff misstates the applicability of *Santa Monica Culinary Welfare Fund* to this case. There, the Ninth Circuit found that, while the collective bargaining agreement set the amount of contributions that the defendant was required to make to the fund, the agreement was silent on the issue of trustee auditing, which was a task that the trust agreement itself entitled the trustees to undertake. 920 F.2d at 1492. The Ninth Circuit concluded that, where the collective bargaining agreement was silent on trustee auditing rights, the trustees reserved those rights insofar as they were explicitly enumerated in the trust agreement, to which the defendant was a party. *Id.* at 1494. Plaintiff would like the court to analogize the holding in *Santa Monica Culinary Welfare Fund* to this case, thereby allowing the trustees to impose contribution obligations where the collective bargaining agreement is "silent" on the issue. The court declines to do so.

Here, unlike the Ninth Circuit case, the collective bargaining agreement at issue is intentionally "silent" about trust contributions, because defendant negotiated to eliminate them from its agreement with the union. Indeed, since the execution of the 2016 CBAs, neither the collective bargaining agreement nor the trust agreement contain any provision that would require defendant to make contributions to the trust. *See generally* (ECF No. 33–1).

Plaintiff argues that certain provisions within the second restated agreement grant the trustees the right to demand contributions from an employer; however, these provisions pre-suppose the existence of an employer's obligation to make the contributions pursuant to the terms of an existing collective bargaining agreement. (ECF No. 33 at 13–17). Indeed, as defendant correctly notes, the second restated agreement requires employers to make contributions to the trust only "as required by the relevant Collective Bargaining Agreement or participation agreement." (ECF No. 33–3 at 13). Furthermore, the second restated agreement defines the term "Contribution" as "a payment required to be made to the Fund by any Individual Employer under the provisions of any Collective Bargaining Agreement or other training participation agreement." *Id.* at 5–6.

Plaintiff has failed to cite any other relevant provision contained within the 2016 CBAs or the second restated agreement that might obligate defendant to make contributions to the trust. The union and defendant engaged in a lengthy negotiations process, which ultimately resulted in

- 8 -

a hearing before an ALJ, who ordered the union to execute a new collective bargaining agreement that omitted Article 23.02 (the article requiring defendant to make contributions to the trust).

By the terms of the second restated agreement, the trustees are entitled only to contributions as called for by the relevant collective bargaining agreement. Accordingly, the court finds that plaintiff is not entitled to contribution payments from defendant following the effective date of the 2016 CBAs, September 1, 2015. Accordingly, the court will grant defendant's motion for summary judgment.

**IV. Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendant Brady Linen Services, LLC's motion for summary judgment (ECF No. 34) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that plaintiff Southern Nevada Operating and Maintenance Engineers Apprenticeship and Training Trust Fund's motion for summary judgment (ECF No. 33) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that Brady Linen Services, LLC's motion for leave to file supplemental exhibit to its motion for summary judgment (ECF No. 39) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that defendant shall prepare a proposed judgment consistent with this order and submit it to the court within thirty (30) days of the filing of this order.

DATED September 26, 2018.

_____
UNITED STATES DISTRICT JUDGE